

RECEIVED
CIRCUIT COURT

IN THE CIRCUIT COURT FOR WILLIAMSON COUNTY, TENNESSEE
AT FRANKLIN

| | | |
|---|---|---|
| ISSAM YONIS | ) | FILED |
| | ) | SEP 2 9 2005 |
| Plaintiff | ) | |
| | ) | Debbie McMillan Barrett |
| v. | ) CASE NO: 04695 | Circuit Court |
| | ) | |
| COVERALL OF NORTH AMERICA, INC. | ) | |
| | ) JURY DEMANDED | |
| Defendant | ) | |
| | ) | |
| | ) | |

## AMENDED COMPLAINT

This is a civil complaint for damages arising from the willful, fraudulent, and deceptive trade practices of Defendant Coverall North America, Inc. and its agents and/or employees, in violation of the Tennessee Consumer Protection Act, fraud in the inducement, negligent misrepresentation, breach of contract, and other statutory and common law violations.

### PARTIES

1. Plaintiff Issam Yonis is a Permanent Resident of the United States who is domiciled at 464 Jessie Drive, Nashville, Davidson County, Tennessee.

2. Defendant Coverall North America, Inc. is a business entity authorized to do business in the State of Tennessee and having a principal office located at 500 W. Cypress Creek, Suite 580, Ft. Lauderdale, Florida 33309. Defendant may



EXHIBIT B

be served with process through its registered agent, Corporate Creations Network, Inc. at 205 Powell Place, Brentwood, Tennessee 37027. Coverall North America, Inc. does business in Tennessee under the assumed name of Coverall Cleaning Concepts.

## FACTS

3. Plaintiff Issam Yonis is a Kurdish national who is illiterate in reading and writing the English language.

4. Upon information and belief, Defendant Coverall engages, at least in part, in commercial cleaning services.

5. On or about September 8, 2003, Mr. Yonis and his wife, Madina Ali, approached Gary W.[1], and agent and/or employee of Defendant Coverall, concerning Mr. Yonis's potential employment with Defendant Coverall.

6. Gary W. suggested that Mr. Yonis return in a few days "to fill out an application." Mr. Yonis's wife, Madina Ali, specifically asked Gary W. if her presence was necessary at this subsequent meeting, since Mr. Yonis was unable to read or write in English. Gary W. told her not worry about returning with her husband and that he would "take care of" Mr. Yonis.

---

[1] At this time, Gary W.'s last name is unknown to Plaintiff Yonis. This information is expected to be learned through discovery; at which time, Plaintiff will move this Court for leave to amend his Complaint and add Gary W. as a defendant.

-2-

7. Mr. Yonis returned to Defendant Coverall's office on September 11, 2003, and Gary W. handed Mr. Yonis some paperwork to fill out and sign. Mr. Yonis again told Gary W. that he had difficulty reading and writing the English language. Gary W. assured Mr. Yonis that the paperwork was nothing more than a standard application for employment, filled out the paperwork without Mr. Yonis's assistance, and asked Mr. Yonis to sign it. In reliance upon Gary W.'s representation that the paperwork was a standard employment application, Mr. Yonis signed.

8. Upon information and belief, the paperwork signed by Mr. Yonis was not a standard application for employment; instead, the paperwork contained a franchise agreement and at least two promissory notes, obligating Mr. Yonis to pay Defendant Coverall a sum exceeding twenty thousand dollars ($20,000.00).

9. Mr. Yonis was never told that he was signing a franchise agreement or promissory notes obligating him to pay Defendant Coverall anything. Mr. Yonis received nothing in consideration for these notes.

10. Gary W. then instructed Mr. Yonis to pay one thousand dollars ($1,000.00), for which Mr. Yonis would then be given a cleaning account at the Nashville "Arcade" (Arcade account) amounting to seven thousand dollars ($7,000.00) per month in income to Mr. Yonis.

11. Mr. Yonis's job was to keep the common areas of the "Arcade" clean, which he did and for which he was recognized by Defendant Coverall with a Certificate of Appreciation. However, Mr. Yonis never received the $7,000.00 per month in income that Gary W. promised him.

12. On October 3, 2003, Gary W. contacted Mr. Yonis to inform him of another cleaning account. In order to receive this account, according to Gary W., Mr. Yonis would have to pay Gary W. two thousand dollars ($2,000.00) in cash. Mr. Yonis paid the $2,000.00, and was tendered a receipt reflecting only a $1,000.00 payment.

13. Gary W. informed Mr. Yonis that he would be cleaning the Harpeth Terrace Convalescent Center (HT account), for which Mr. Yonis would also receive $7,000.00 per month in income.

14. Shortly after receiving the "HT account," Mr. Yonis was called by someone at Defendant Coverall and informed that he would no longer be working at the "Arcade," and that, under no circumstances should he return there.

15. Approximately two months later, Mr. Yonis received a call from "Dean"[2] with Defendant Coverall. Dean informed Mr. Yonis that he was not to go back to the HT account, and that Mr. Yonis's work was no good. Dean informed Mr.

---

[2] At this time, Plaintiff is unaware of Dean's full name. Plaintiff, upon learning Dean's name through discovery, will seek to amend his Complaint to add Dean as a defendant.

Yonis that if he even entered the Harpeth Terrace Convalescent Center's parking lot, Harpeth Trace would contact the police.

16. Defendant Coverall never provided Mr. Yonis with a legitimate reason for terminating his work at either the Arcade or HT accounts.

17. After being removed from the HT account, Mr. Yonis was given no further work. Mr. Yonis called Defendant Coverall on several occasions; each time, Defendant Coverall informed Mr. Yonis that they had no more work for him.

18. Throughout the few months that Mr. Yonis was working with Defendant Coverall, Defendant Coverall never paid Mr. Yonis the $7,000.00 per month it promised him. Instead, only partial payments were made to Mr. Yonis.

19. Upon information and belief, the balance of the $7,000.00 that was not paid to Mr. Yonis was either retained by Gary W. and/or Defendant Coverall, or it was applied to the promissory notes Mr. Yonis unknowingly signed. The status of the three thousand dollars ($3,000.00) that Mr. Yonis paid to Gary W. is unknown.

20. Mr. Yonis never received his final payment on the HT account – despite repeated calls. Finally, Mr. Yonis went to Defendant Coverall's office to pick up his final check and was told by a Defendant Coverall employee that he could not have it and to get out of Defendant Coverall's office.

21. A Defendant Coverall employee forcibly pushed Mr. Yonis out of the office and stated that if he (Mr. Yonis) did not leave, the police would be called.

22. On or about January 22, 2004, Mr. Yonis received correspondence from "Global Collection Systems" entitled "Notice of Default, Coverall North America, Inc. Franchise Agreement" and informing him that his "account had been forwarded to the Legal Department of Global Collections Systems for the purpose of collecting from [him] the money that [he] owe[d] Coverall North America, Inc." (a copy of this correspondence is attached as Exhibit 1)

23. The correspondence lists promissory note numbers 478 and 480, with past-due balances of $108.40 and $20,307.51 respectively.

24. Prior to receiving the Global Collection Systems correspondence, Mr. Yonis was completely unaware that he had signed any sort of promissory note obligating him to pay anything to Coverall North America.

25. Defendant Coverall North America, Inc., through its agents and/or employees, willfully engaged in deceptive trade practices in its transactions with Mr. Yonis.

## CAUSES OF ACTION

## VIOLATIONS OF THE TENNESSEE CONSUMER PROTECTION ACT

26. Defendant is liable, in damages, for the following violations of the Tennessee Consumer Protection Act, which statutes were in full force and effect at all times material to Plaintiff's Complaint:

    a. Tenn. Code Ann. § 47-18-104(b)(3); Causing likelihood of confusion or misunderstanding as to affiliation, connection or association with, or certification by, another;

    b. Tenn. Code Ann. § 47-18-104(b)(5); Representing that services have approval or benefits it did not have or that a person had sponsorship, approval, status, affiliation, or connection that such person did not have;

    c. Tenn. Code Ann. § 47-18-104(b)(9); Advertising services with intent not to sell them as advertised;

    d. Tenn. Code Ann. § 47-18-104(b)(12); Representing that a consumer transaction confers or involves rights, remedies, or obligations that it does not have or involve;

    e. Tenn. Code Ann. § 47-18-104(b)(27); Engaging in any other act or practice which is deceptive to the consumer or to any other person.

27. Mr. Yonis, due to his deficiencies in reading and writing the English language, lacked the competence to appreciate the consequences of his unfair bargaining position.

28. The nature of the deception or coercion practiced upon Mr. Yonis was of the most egregious kind, involving the signing of promissory notes and franchise agreements in an effort to bind Mr. Yonis to obligations and amounts of which he was unaware, under the guise of having Mr. Yonis complete an employment application.

29. By its deceptive acts, Defendant Coverall, through its agents and/or employees, did not act in good faith and willfully or knowingly violated the provisions of the Tennessee Consumer Protection Act.

30. Defendant Coverall is liable to Mr. Yonis in damages arising from its violations of the Tennessee Consumer Protection Act, and these damages should be trebled due to Defendant's willful violations of said Act, pursuant to Tenn. Code Ann. § 47-18-109(a)(3).

## FRAUD IN THE INDUCEMENT

31. Defendant Coverall North America, Inc., through its agents and/or employees, intentionally misrepresented material facts pertaining to the scope of Mr. Yonis's employment status with Defendant Coverall, by informing Mr. Yonis that he was signing employment application forms instead of franchise agreements and promissory notes.

32. At the time these representations were made, Defendant Coverall's agents and/or employees had knowledge of the representations' falsity.

- 8 -
Case 3:06-cv-01048   Document 1-2   Filed 10/26/06   Page 8 of 11 PageID #: 36

33. Mr. Yonis reasonably relied upon these false representations and was consequently injured as a result of this reliance.

34. When these false representations were made, Defendant Coverall's agents and/or employees had no present intent to fully perform their promises to Mr. Yonis. Instead, Mr. Yonis became an unwitting franchisee, obligated to repay money he never borrowed or pay money he only later found out that he owed.

## NEGLIGENT MISREPRESENTATION

35. Defendant Coverall, in the course of its business, failed to exercise reasonable care or competence in communicating material information to Mr. Yonis pertaining to his status as a franchisee of Defendant Coverall. Defendant Coverall, through its agents and/or employees, supplied false information for the guidance of Mr. Yonis in his business transaction with Defendant. As such, Defendant is subject to liability for the pecuniary loss caused to Mr. Yonis by his justifiable reliance upon the information.

36. Gary W., acting as agent and/or employee of Defendant Coverall, intentionally or negligently supplied false information and/or omitted necessary material facts and information to Mr. Yonis in the guiding his business transaction. Mr. Yonis reasonably relied upon this false information to his detriment.

37. Defendant Coverall North America, Inc. is liable in damages to Mr. Yonis for the intentional and/or negligent misrepresentations made by its agents and/or employees.

38. Defendant Coverall North America, Inc. is liable in damages to Mr. Yonis for fraud in the inducement.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands:

1. That process be issued and served upon Defendant Coverall North America, Inc., and Defendant be required to appear and Answer Plaintiff's Complaint.

2. That Plaintiff be awarded a judgment against Defendant Coverall North America, Inc. in the amount of $200,000.00 in damages.

3. That Plaintiff be awarded treble damages for Defendant's willful violations of the Tennessee Consumer Protection Act.

4. That Plaintiff be awarded reasonable attorneys' fees and associated costs, including discretionary costs.

5. Such further and other general relief to which Plaintiff may be entitled under the laws of the State of Tennessee; and

6. A jury to try all issues so triable of right.

Respectfully submitted:

**BLACKBURN & MCCUNE, PLLC**

_____
Jay R. Slobey (#5398)
Patrick Dollar (#23602)
SunTrust Bank Building
Suite 1700
201 Fourth Avenue, North
Nashville, Tennessee 37219

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing has been sent via U.S. Mail, first class postage pre-paid, to the following:

Brenda Rhoton Clark (#10588)
1230 Second Avenue, South
Nashville, Tennessee 37203
615-244-2445

On this, the 28th day of September, 2005.

_____
Plaintiff's Attorney